# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUSTY D. KOHLER,

   **Plaintiff,**

v.           **No. CIV-16-0170 MCA/LAM**

CAROLYN W. COLVIN, **Acting Commissioner**
of the Social Security Administration,

   **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on ***Plaintiff's Opening Brief*** (*Doc. 19*) filed on August 2, 2016, which this Court construes as a motion to reverse and remand this case to the Commissioner (hereinafter "motion"). On October 31, 2016, Defendant filed a response to the motion (*Doc. 23)* and, on November 15, 2016, Plaintiff filed a reply (*Doc. 24*). On July 28, 2016, United States District Chief Judge M. Christina Armijo issued an order referring this case to the undersigned to hold hearings, perform legal analysis, and prepare proposed findings and a recommended disposition, if necessary. [*Doc. 17*]. The Court has reviewed the motion, response, reply, and relevant law. Additionally, the Court has meticulously reviewed and

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

considered the entire administrative record. [*Doc. 10*]. For the reasons set forth below, the Court recommends that Plaintiff's motion (*Doc. 19*) be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **AFFIRMED**.

# I.  Procedural History

On August 17, 2012, Plaintiff protectively filed an application for Disability Insurance Benefits (hereinafter "DIB") (*Doc. 10-9* at 2-5), alleging the onset of his disability to be September 12, 2010 (*id.* at 4). Plaintiff claimed disability due to spinal issues that necessitated several vertebral fusions. [*Doc. 10-10* at 16]. Plaintiff's application was denied at the initial level on November 14, 2012 (*Doc. 10-6* at 2), and at the reconsideration level on March 12, 2013 (*id.* at 23). Pursuant to Plaintiff's request (*Doc. 10-7* at 12-13), Administrative Law Judge Douglas S. Stults (hereinafter "ALJ") conducted a hearing on December 2, 2013 (*Doc. 10-5* at 6-53). Plaintiff appeared at the hearing, represented by attorney M. Scott Ash,[2] and testified. *Id.* at 10-43. Vocational Expert Margaret Kelsay (hereinafter "VE Kelsay") also testified. *Id.* at 43-52. On March 24, 2014, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was disabled from January 12, 2012 through January 13, 2013, but that, beginning on January 14, 2013, Plaintiff had "medically improved" and was no longer disabled from that date until the date of the decision. [*Doc. 10-4* at 25-26]. On April 23, 2014, Plaintiff requested that the Appeals Council review the ALJ's decision. [*Doc. 10-3* at 18]. On August 24, 2015, the Appeals Council denied review on the ground that it

---

[2] Mr. Ash was appointed to represent Plaintiff on August 20, 2012. [*Doc. 10-7* at 2]. He was not identified by name at the hearing. Beginning on November 3, 2015, attorney Timothy M. White was appointed to represent Plaintiff. [*Doc. 10-3* at 5].

had "found no reason under our rules to review the [ALJ]'s decision. *Id*. at 12. This was the final decision of the Commissioner. On March 9, 2016, pursuant to an extension of time to file a civil action granted by the Appeals Council on February 3, 2016 (*Doc. 10-3* at 2), Plaintiff filed his complaint in this case (*Doc. 1*).

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not

re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."   *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).   "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."   *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.   20 C.F.R § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."   20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work

in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on August 20, 1964, and was 47 years old, which is defined as a "younger person" aged 18-49 (20 C.F.R. § 404.1563(c)), on the alleged disability date of September 12, 2011.  [*Doc. 10-9* at 4].   Plaintiff has a high school education and completed an Associate of Arts degree in animal science, as well as a carpentry certificate from a vocational-technical school.   [*Doc. 10-5* at 11].   Prior to filing his disability claim, Plaintiff had worked as:   a funeral attendant and an apprentice embalming technician, which were medium and heavy work, respectively; a flooring sales representative, which was light work; a manufactured housing salesman, which is typically light work; and a retail store manager, which is typically light work, but was described by Plaintiff as heavy work, as he performed it.   *Id.* at 44-45.   Plaintiff claims disability due to an extensive history of lumbar and cervical spine disorders that resulted in a series of fusion surgeries, beginning in 1997.   [*Doc. 19* at 1-2].   Plaintiff's medical records include:   orthopedic reports dated October 27, 2010 through October 7, 2011, by Michael H. Wright, M.D. and Khalid Khan, M.D. (*Doc. 10-13* at 2-15, 18-19); examination report, dated May 7, 2013 by Andrew C. John, M.D. (*Doc. 10-17* at 11-21); treatment records for the period from September 8, 2011 through February 25, 2013, from Robert L. Remondino, M.D. (*Doc. 10-18* at 5 through *Doc. 10-19* at 37); and examination report, dated January 11, 2012, by Robert Wienecke, M.D. (*Doc. 10-18* at 41-42).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step SEP, the ALJ found that Plaintiff had engaged in substantial gainful activity from the alleged onset date of September 12, 2010, through January 5, 2011, when he stopped working as a store manager for Family Dollar Store.   [*Doc. 10-4* at 9-10].   Therefore, the ALJ found that Plaintiff was not disabled during that time period.   *Id.* at 10.   Also at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from January 6, 2011 until he became disabled on January 11, 2012.   *Id.*   At step two, for the same period, the ALJ found that Plaintiff had the following severe impairments:   "disorders of the cervical and lumbar spine, discogenic and degenerative, September 2001 fusion L3-4, December 2000 fusion L4-5, and fusion C5-7; and, obesity."   *Id.*   In addition, the ALJ found that, although Plaintiff had been treated for mild coronary artery disease in March 2011, there was no evidence of any ongoing treatment of that condition, and no continued diagnosis of that condition after the alleged disability date.   *Id.*   The ALJ found that Plaintiff's hypertension and restless leg syndrome were well controlled by medication, and that other treatments Plaintiff had received were minimal and the conditions were temporary.   *Id.* at 10-11.   Finally, the ALJ found that Plaintiff had medically determinable, but non-severe, mental impairments of depression and anxiety.   *Id.* at 11.

At the third step, for the same January 6, 2011 through January 11, 2012 period, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).   *Id.* at 12.   In so finding, the ALJ considered Listing 1.04 with respect to spine disorders, Soc. Sec. Rep. 02-01 with respect to obesity, and the musculoskeletal impairment listings generally.   *Id.* at 12-13.

Before step four, the ALJ determined Plaintiff's RFC for the period from January 6, 2011 through January 11, 2012, concluding that he had the residual functional capacity to:

> perform a range of "light work," as defined in 20 CFR 404.1567(b), except that [Plaintiff] could only:  perform no work overhead; use his upper extremities frequently (as opposed to constantly) for reaching, handling, fingering, and feeling; occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; must avoid concentration [sic] exposure to vibration; have no more than occasional exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; and occasionally operate foot pedals or controls with his bilateral lower extremities.

*Id*. at 13 (footnote omitted).

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work from January 6, 2011 through January 11, 2012.   *Id*. at 19.   The ALJ based this conclusion on the fact that the demands of all of Plaintiff's past relevant work exceeded his current RFC.   *Id*. Based on that determination, the ALJ proceeded to step five, where he found, based on both VE Kelsay's testimony and an assessment by Vocational Expert Christy V. Wilson-Wiles (hereinafter VE Wilson-Wiles") (*Doc. 10-11* at 3-8), concluding that Plaintiff "had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy" (*Doc. 10-4* at 19-20).   Based on VE Kelsay's testimony, the ALJ found that Plaintiff's past work skills were transferable to the job of merchant patroller (DOT[3] 372.667-038), which is considered to be light semiskilled work.   [*Doc. 10-4* at 20].   The ALJ also found that Plaintiff would be able to perform light unskilled jobs, such as gas island cashier (DOT 211.462-010), ticket seller (DOT 211.467-030), and parking lot attendant

---

[3]   "DOT" stands for Dictionary of Occupational Titles, which is available at http://www.occupationalinfo.org/contents.html (site last visited on January 6, 2017).

(DOT 915.473-010).  *Id.*   The ALJ determined that the VE's testimony was "not entirely consistent with the information contained in the [DOT] in that she supplemented her testimony at the hearing with her own research, knowledge, and experience of these occupations."[4]  *Id.* at 21. The ALJ concluded that, "although [Plaintiff]'s additional limitations did not allow [him] to perform the full range of light work from January 6, 2011, through January 11, 2012, considering [his] age, education and transferable work skills, a finding of 'not disabled' was appropriate under the framework of Medical-Vocational Rules 202.21 and 202.22 [in 20 C.F.R. § 404, Subpt. P, Appx. 2]."  *Id.*

The ALJ next found that, while Plaintiff was not disabled prior to January 12, 2012, he "became disabled on that date and continued to be disabled through January 13, 2013.  *Id.* at 21. The ALJ found that Plaintiff had the same severe impairments during this time period as in the previous one, and that none of them were of listing severity.  *Id.*   The ALJ determined Plaintiff's RFC for the period from January 12, 2012 through January 13, 2013, concluding that he had the residual functional capacity to:

> perform "light work," as defined in 20 CFR 404.1567(b), except that [Plaintiff] required an average of at least one additional, unscheduled work break daily, of at least 30 minute duration, at random and unpredictable times, over and above the morning and afternoon breaks and lunch period as traditionally given; and would have been absent from the workplace an average of l day every 2 weeks.

*Id.* at 22.  The ALJ found that Plaintiff was unable to perform his past relevant work during this time period.  *Id.* at 24.  Additionally, based on VE Kelsay's testimony, the ALJ concluded that there were no jobs in the national economy that Plaintiff could perform with this RFC, and that he

---

[4] VE Kelsay supplemented her testimony by reducing the numbers for the representative jobs that were available in the United States, based on Plaintiff's specific RFC.  *See* [*Doc. 10-5* at 47].

was therefore disabled for the period from January 12, 2012 through January 13, 2013.  *Id*. at 25.

The ALJ then entered findings regarding the period of time from January 14, 2013 through the date of the decision, March 24, 2014.  The ALJ again found that, during this time period, Plaintiff had the same severe impairments he had had in the preceding periods, and that none of those impairments, or combination of impairments, was of listing level severity.  *Id*.  However, the ALJ found that Plaintiff's severe impairments had medically improved as of January 14, 2013, when Plaintiff's treating neurosurgeon released him to return to work activity, with limitations. *Id*. at 26.  The ALJ found that, due to that medical improvement, Plaintiff's RFC had increased. *Id*. at 27.  As of January 14, 2013, the ALJ found that Plaintiff had the residual functional capacity to:

> perform "light work," as defined in 20 CFR 404.1567(b), except [Plaintiff] is able to stand and/or walk for up to 4 hours total in an 8-hour workday; sit the remainder of the workday, at least 4 hours; maintain either posture (seated or on his feet) for, at least, 1 hour at a time; perform no work overhead; use his upper extremities frequently (as opposed to constantly) for reaching, handling, fingering, and feeling; occasionally climb ramps and stairs, balance, and stoop; never kneel, crouch, crawl, and climb ropes, ladders, or scaffolds; must avoid concentration [sic] exposure to vibration; have no more than occasional exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; and occasionally operate foot pedals or controls with his bilateral lower extremities.[5]

*Id*. at 27 (hereinafter "RFC 3").   The ALJ then found that Plaintiff was still unable to perform his past relevant work, but that he could perform the same representative occupations that he had been able to perform until January 12, 2012, which were merchant patroller, gas island cashier, ticket

---

[5] With the exception of the sit, stand, and walk restrictions, this RFC is identical to the RFC assessed for Plaintiff in the period from January 6, 2011 to January 11, 2012.

seller, and parking lot attendant.   *Id*. at 32-34.   Therefore, the ALJ found that Plaintiff's period of disability ended on January 14, 2013.   *Id*. at 34.

# V.   Analysis

In his motion, Plaintiff contends that the ALJ failed to:   (1) make proper assessments at steps four and five of the SEP; (2) properly evaluate medical and "other source" evidence; (3) protect Plaintiff's Fifth and Fourteenth Amendment rights; and (4) properly evaluate Plaintiff's credibility.   [*Doc. 19* at 3].   Defendant disputes Plaintiff's contentions and argues in response that:   (1) Plaintiff's assertion that the ALJ inappropriately found Plaintiff capable of "light work" is invalid, and the ALJ properly found that Plaintiff could perform a limited range of light work (*Doc 23*  at 13-15);  (2) the  ALJ  reasonably  assessed  the  opinions  of  Dr. Glass  and VE Wilson-Wiles (*id*. at 15-16); (3) the ALJ reasonably discounted Plaintiff's credibility based on daily activities that were inconsistent with his claims of disabling pain (*id*. at 16-17); and (4) Plaintiff's Constitutional rights were not violated by the VE's reliance on a journal article to form her opinion (*id*. at 17-18).   In his reply, Plaintiff states that:   (1) Defendant ignores that the ALJ's hypothetical RFC "was for a person who can 'perform light work *as defined by the Regulations*'" (*Doc 24* at 1); (2) the opinions of both the state agency reviewer and the ALJ result in a maximum ability to perform only sedentary work, yet no sedentary jobs were discussed, and the ALJ did not weigh the state agency reviewer's opinion (*id*. at 2); (3) Plaintiff did not request the journal article because he "could not know that access to the article referenced by the VE would be available to only certain members of a certain organization" (*id*. at 2-3); and (4) Plaintiff "cannot be 'generally credible' during one period of time with the same [activities of daily living] that make him not credible during another period of time" (*id*. at 3).

### A.   Plaintiff's Ability to Perform a Limited Range of Light Work

In assessments of a claimant's residual functional capacity ("RFC"), work is classified in terms of "exertional level," which represents the range of primary strength activities that it requires.[6]   The following activities are considered to be exertional:   "sitting, standing, walking, lifting, carrying, pushing, and pulling."[7]   Exertional levels may be classified as sedentary, light, medium, heavy, or very heavy.[8]   An RFC that provides that a claimant can provide a "full range of work" means that he or she can perform "[a]ll or substantially all of the unskilled occupations existing at an exertional level."[9]   In this case, the ALJ assessed Plaintiff capable of light work,[10] with varying additional limitations, during all three periods under consideration:   (1) from September 10, 2010 through January 11, 2012 ("first non-disability period"); (2) from January 12, 2012 through January 13, 2013 ("disability period"); and (3) from January 14, 2013 to the date of

---

[6] POMS DI 25001.001B.21 available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001 (site last visited January 9, 2017.  The Social Security Administration's Program Operations Manual System ("POMS") is a primary source of information used by Administration employees with respect to the processing of claims for Social Security benefits.   POMS DI specifically relates to claims for Title II Disability Insurance Benefits (DIB).

[7] *Id*. at B.20.

[8] *Id*. at B.21.

[9] Id. at B.36.

[10] "Light work" requires the ability to occasionally lift or carry up to 20 pounds, and frequently lift or carry up to 10 pounds (POMS DI 25001.001B.21), where "occasionally" means the activity occurs at least once during, and up to one third of, an eight–hour workday (POMS DI 25001.001B.34), and "frequently" means one-third to two thirds of an eight-hour workday (POMS DI 25001.001B.54).   Light work also "[u]sually requires walking or standing for approximately 6 hours of the day.   Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.   Even though the weight lifted may be only a negligible amount, an occupation is rated as light when it requires walking or standing to a significant degree, sitting most of the time while pushing or pulling arm or leg controls, or working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible.   Usually requires only occasional, rather than frequent stooping and no crouching.   Usually involves grasping, holding and turning objects, but does not require use of the fingers for fine activities to the extent required in much sedentary work.   Generally includes the functional capacity to perform sedentary work."   POMS DI 25001.001B.44.

the decision ("second non-disability period").   [*Doc. 10-4* at 13, 22, 27].   However, the ALJ did not find that Plaintiff was capable of the "full range" of light work for any of those time periods.

Plaintiff contends that the ALJ erred at steps four and five of the SEP because the hypothetical presented to VE Kelsay at the hearing indicated that the hypothetical person could "perform light work as defined by the regulations," even though his own assessment of Plaintiff's RFC would not qualify Plaintiff for "light work."   [*Doc. 19* at 3-4].   Plaintiff argues that "[w]alking and standing four hours a day and sitting four hours a day 'seems' inconsistent with light work."   *Id.* at 4 (citing *Payden v. Astrue*, 2010 WL 5392613, *3 (D. Kan. December 21, 2010) (unpublished)).[11]

In this case, the ALJ assessed Plaintiff capable of "light work," as that term is defined in the regulations, but specifically qualified that defined term with added limitations, as he is allowed to do.   *See, e.g.*, Soc. Sec. Rep. 83-12 (when an individual's RFC "does not coincide with the definition of any one of the ranges of work as defined in . . . the regulations," the ALJ "will consider the extent of any erosion of the occupational base" caused by the departure from the defined work range).   A VE may be tasked with finding jobs that a claimant could perform when the RFC assessed by the ALJ restricts the claimant to "less than the full range of" work in a specific category (*see id.* at *1-2) (where the occupational base is significantly affected, the ALJ may need to consult a vocational resource), just as it is typically a VE who finds jobs that will

---

[11] The *Payden* case is completely distinguishable from the present case, and simply repeats a reviewing consultant's statement regarding a doctor's RFC assessment, which was missing one of its pages, to the effect that "Dr. says [claimant] is capable of returning to light work but says he can walk, stand 4 hours and sit 4 hours which is not totally consistent with light work."   *Payden*, 2010 WL 5392613 at *4.   At issue in that case was whether or not the reviewing consultant, who assigned "considerable weight" to the doctor's opinion, had determined that the plaintiff was capable of sedentary or light work.   *Id.* at *4-5.

allow for a claimant's non-exertional limitations.   Appendix 2 of the disability insurance regulations  (20 C.F.R. Pt. 404,  Subpt. P, Appx. 2)  provides  "medical-vocational  guidelines," based on a claimant's exertional capacity, age, education, and previous work experience, for ALJs to use in their ultimate determination of disability.   However, by necessity those guidelines apply only where a claimant can perform the full range of work in a particular exertional category, and thus caution that, where a claimant's RFC "falls between the ranges of work indicated in the rules (e.g., the individual who can perform more than light but less than medium work)," the specific rules within those guidelines will not apply.   Appx. 2 § 200.00(d) (where "an individual's *specific profile* is not listed within this appendix," disability must be determined "on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this appendix 2") (emphasis added).   *See also* 20 C.F.R. §§ 404.1569 ("The rules in appendix 2 do not cover all possible variations of factors," and do not apply "if one of the findings of fact about the [claimant]'s vocational factors and [RFC] is not the same as the corresponding criterion of a rule"); SSR 83-12 at *1 (identifying its purpose as "set[ting] out the process of using the numbered rules [in Appendix 2] in adjudicating those claims in which the exertional components of the RFC are less or greater than those of a specifically defined exertional range of work").

In RFC 3, the ALJ added a sit/stand restriction to Plaintiff's capacity to perform "light work," as follows: "[Plaintiff] is able to stand and/or walk for up to 4 hours total in an 8-hour workday; sit the remainder of the workday, at least 4 hours; maintain either posture (seated or on

his feet) for, at least, 1 hour at a time."   [*Doc. 10-4* at 27].[12]   That limitation required VE Kelsay

to find jobs that were not only listed in the DOT as "light," but also would not require Plaintiff to

stand/walk or sit more than four hours in a normal workday.   There is no evidence, nor any reason

to suspect, that VE Kelsay did not understand that to be her assignment.   By finding that Plaintiff

could not perform the full range of light work jobs, the ALJ also decreased the probability that

VE Kelsay would find sufficient jobs available that Plaintiff could perform.   The sit/stand

limitation also required VE Kelsay to consider sources other than the DOT, as the DOT does not

include a sit/stand characterization.[13]   [*Doc. 10-5* at 47].   Thus, VE Kelsay indicated that the

research publication she relied on "identified percentages of jobs" within the entire occupational

base that could be considered when a sit/stand option was included, and that total job numbers

were *reduced* based on those percentages.   *Id.*

Nonetheless, Plaintiff asserts that the ALJ erred because "[t]o perform light work, a person

must be able to walk and/or stand for at least six hours in an eight-hour work day," and "must be

able to sit up to six hours in eight," and, therefore, Plaintiff "cannot perform . . . light work with the

[] hypothetical and RFC" assigned to him by the ALJ.[14]   [*Doc. 19* at 4].   This argument

completely ignores the reality that the ALJ found Plaintiff to be capable of only a *limited range* of

---

[12] This limitation was included only in the ALJ's RFC 3 assessment of Plaintiff pertaining to non-disability period 2, which began on January 14, 2013.   *See* [*Doc. 10-4* at 27].

[13] This fact is evidence that VE Kelsay understood that Plaintiff's RFC did not allow him to perform the "full range" of light work.

[14] Plaintiff also asserts that he similarly could not perform sedentary work since even those jobs would require him to sit for about six hours in a workday.   [*Doc. 19* at 4].   However, since this Court has concluded that Plaintiff's objections to the ALJ's assessment of "light work" to be without merit, this claim need not be addressed. *See* 20 C.F.R. § 404.1567b (the capacity to perform light work generally includes the capacity to perform sedentary work as well).

light work, and that those additional limitations were conveyed to, and considered by, VE Kelsay. Therefore, the Court finds this claim of error by Plaintiff to be without merit.

## B.   The ALJ's Consideration of the Evidence

Plaintiff's second claim of error is premised on a similar misreading of the law as was his first, which is that "the best" that an RFC with exertional limitations of four hours of standing or walking and six hours of sitting allows "is a sedentary exertional level of work."[15]   [*Doc. 19* at 5]. Specifically, Plaintiff contends that, while the ALJ assigned "great weight" (*Doc. 10-4* at 31-32) to the opinion of non-examining physician Kenneth Glass, M.D., who assessed such limitations at the reconsideration level of Plaintiff's claim (*Doc. 10-6* at 32), the assessment given by Dr. Glass would not allow Plaintiff to perform light work (*Doc. 19* at 5).   This Court has already determined that RFC 3, which includes an even more restrictive sitting limitation, appropriately limited the exertional category of "light work."   As such, this argument does not present a valid challenge to RFC 3.

Plaintiff also contends that the ALJ failed to explain how he determined the weight to be assigned to Dr. Glass' opinion and, consequently, failed to "make it clear to reviewers how he arrived at his conclusions regarding the weight of the evidence."   *Id*. at 5-6 (citation omitted).   In this argument, Plaintiff asserts that the ALJ erred by assigning weight to medical opinions while failing to "apply or mention" the regulatory factors he is required to consider.   *Id*.   These factors (20 C.F.R. § 404.1527(c)) are used to evaluate the weight to be given to "any medical opinion,"

---

[15]  In his first argument, Plaintiff claimed that the ALJ's RFC 3 would not allow him to "perform sedentary work."   [*Doc. 19* at 4].   The reason for this difference is that RFC 3 limited Plaintiff to only 4 hours of sitting, whereas sedentary work requires that "one must be able to sit for about six hours."   *Id*. (citations omitted).

unless a treating source's opinion is given "controlling weight" (*id*.).  *See also, Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) ("an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight") (internal punctuation and citation omitted).

In this case, the ALJ did not give controlling weight to any treating physician's opinion, nor did he expressly address the § 404.1527(c) factors with respect to any of the weights he did assign to the numerous medical sources.  Significantly, however, the ALJ gave at least "some weight" to every medical opinion he reviewed (*see Doc 10-4* at 17-19 and 31-32_, and Plaintiff does not argue that the ALJ's assignment of weight to any particular source was "wrong" or that the ALJ rejected an opinion that he should not have, based on the regulatory factors.  Effectively, Plaintiff's argument is that the ALJ's decision should be remanded because he did not discuss each of the § 404.1527(c) factors with respect to his assignment of "great weight" to Dr. Glass.[16] Plaintiff further claims to have been prejudiced by that failure because "[a] reasonable ALJ would have properly evaluated the source opinions and could have altered the course of this case by finding [Plaintiff] disabled and paying the claim."  [*Doc. 19* at 6] (citation omitted).  Without identifying a medical opinion that is more restrictive than the RFC assigned by the ALJ and was rejected without discussion of the § 404.1527(c) factors, this argument is pure speculation.

---

[16] The ALJ also assigned great weight to Plaintiff's treating physicians, orthopedic surgeon Michael H. Wright, M.D. (*Doc.10-4* at 17) and neurosurgeon Robert Remondino, M.D. (*id*. at 18, 31), as well as to examining physicians Andrew John, M.D. (*id*. at 31) and Robert Wienecke, M.D. (*id*. at 18).  Apparently, Plaintiff does not specifically disagree with the opinion of any of these doctors, only with the ALJ's characterization of them and his failure to consider each of the 20 C.F.R. § 404.1527(c) factors prior to assigning weight to their opinions.

Indeed, the only opinion that Plaintiff specifically discussed, that of Dr. Glass, was actually *less* restrictive than the RFC that was assessed by the ALJ.   Therefore, any error by the ALJ in failing to discuss the § 404.1527(c) factors was harmless.  *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity").[17]

### C.   The Fifth and Fourteenth Amendments

Plaintiff's third claim of error is that "[t]he ALJ failed to properly protect [Plaintiff's] Fifth and Fourteenth Amendment rights."   [*Doc. 19* at 7].   This argument is based on VE Kelsay's reliance on a journal article during her testimony that Plaintiff claims is "available only to members of the International Association of Rehabilitation Profession members."   *Id*.   Plaintiff contends that "[t]he ALJ "should have made sure that this article was submitted into evidence, and in failing to do so [the ALJ] failed to properly develop the record, which is his duty."   *Id*. (citation omitted).   Again, Plaintiff claims to be prejudiced by that failure because "[a] reasonable ALJ would have properly required the submission of the VE's authority into evidence and could have altered the course of this case by finding Claimant disabled and paying the claim."   *Id*. (citation omitted).

As Defendant points out, Plaintiff neither requested a copy of the article at the hearing, nor made any attempt to obtain it afterward from Defendant or the ALJ.   [*Doc. 23* at 18].   An ALJ is not required to intuit Plaintiff's needs and provide for them.   *See, e.g., Cowan v. Astrue*,

---

[17] Plaintiff also makes an argument regarding the ALJ's reliance on VE Wilson-Wiles (Doc. 19 at 6), which is not only difficult to understand, but again fails to establish any prejudice as a result.   The Court therefore will not specifically address that claim.

552 F.3d 1182, 1187-88 (10th Cir. 2008) (ALJ has no need to develop the record where the ALJ had sufficient evidence to make a decision, especially when Plaintiff's counsel did not identify anything needing further development) (relying, in part, on *Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994) for the proposition that "refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims and where counsel representing claimant failed to specify the additional information sought" is appropriate). Of even more significance in this case is that the document Plaintiff claims requires remand actually benefitted him by reducing the available jobs he could perform based on his sit/stand limitations.   Thus, whether or not the Plaintiff was "entitled" to a copy of that document, he was not prejudiced by his failure to receive it.

### D.   The ALJ's Credibility Assessment

Plaintiff argues that the ALJ "failed to perform a proper credibility determination." [*Doc. 19* at 7].   Plaintiff contends that the ALJ made an "unfavorable credibility determination" for both the first and second non-disability periods[18] (*id*. at 8-10 and 11-14, respectively).   The ALJ found that, during both non-disability periods, Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."   [*Doc. 10-4* at 16 and 30].   In challenging this finding, Plaintiff employs what is sometimes characterized as a

---

[18] In its definition of the "first non-disability period," this Court included a period of time after the alleged onset of disability when Plaintiff was still working.   *See* p. 11-12, *supra*.   However, Plaintiff only contests the ALJ's finding of non-disability from January 6, 2011, the day after he stopped working, to the last day of the first non-disability period, January 11, 2012.   *See* [*Doc. 19* at 2, 8].   The difference between Plaintiff's four time periods and the Court's three has no significance, however, since Plaintiff was found not disabled during the entire period, and only one credibility determination was assessed by the ALJ for any period prior to January 12, 2012.   *See* [*Doc. 10-4* at 16].

"shotgun approach,"[19] which consists of spraying projectiles in as wide an area as possible in an effort to obtain one fatal blow.  Thus, Plaintiff states that:  the ALJ "ignores [that] a claimant need not be completely helpless, bedfast, or at death's door in order to be disabled" (*Doc. 19* at 12); Plaintiff's numerous activities of daily living ("ADLs") upon which the ALJ relied are actually "minimal" (*id.*); the ALJ engages in "unacceptable speculation" (*id.* at 13); information upon which the ALJ relied "comes almost exclusively from [Plaintiff]'s *Disability Report-Adult*"[20] that "was completed in the time period when [Plaintiff] was considered to be 'generally credible' and unable to work" (*id.* at 13-14); the ALJ "inconsisten[tly]" used the "same information" both to impeach Plaintiff's credibility and to find him credible (*id.* at 14); the ALJ's comments about a missing report "sully" his counsel's reputation, are not a legitimate basis for rejecting it, and constitute "disfavored speculation" (*id.*); the ALJ "consider[ed] only the evidence supporting his decision while ignoring evidence helpful to [Plaintiff]" (*id.* at 15); by "consistently den[ying]" that Plaintiff has "memory difficulties," the ALJ "ignored" that Plaintiff "needed reminders for his treatments" (*id.* at 16); and the ALJ's credibility determination resulted from "repeated errors of fact and selective omission of evidence supporting [Plaintiff]" (*id.*).

---

[19] "Shotgun approach" is "the hasty use of a wide range of techniques that are nonselective and haphazard." http://www.dictionary.com/browse/shotgun-approach.  *See also* https://en.wiktionary.org/wiki/shotgun_approach ("Shotgun approach" is "[a]n approach in which the subject is indiscriminate and haphazard, using breadth, spread, or quantity in lieu of accuracy, planning, etc.") (sites last visited January 16, 2017).

[20] As Plaintiff did not provide a record citation for this document, the Court can only assume he refers here to the document by the same name in the record (*Doc. 10-10* at 15-23), although that document is both unsigned and undated.  It appears more likely that Plaintiff meant to reference the "Function Report – Adult" (*id.* at 25-32), which is signed, dated, and hand-written.  In any event, the "information" to which Plaintiff refers in the ALJ's decision (*see Doc. 10-4* at 17) is followed by the ALJ's own citation to several documents, including the Function Report, two Reports of Contact (*Doc. 10-10* at 33, 50), and a Vocational Evaluation by VE Wilson-Wiles (*Doc. 10-11* at 3-8).

It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). Thus, "the determination of credibility is left to the observations made by the Administrative Law Judge as the trier of fact. His determinations on this issue are generally considered binding on the reviewing court." *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (citations omitted). Here, Plaintiff claims both that the ALJ's credibility findings are not supported by substantial evidence and that the ALJ relied on "evidence" that was actually "speculation." *Id*. at 7-16. Principally, Plaintiff attacks the ALJ's reliance on Plaintiff's own statements regarding his daily activities, on the ground that, although his symptoms did not cause "total incapacity," they are also "not indicative of an ability to work on a full-time basis." *Id*. at 12. The ALJ described Plaintiff's testimony regarding the severity of his pain and its impacts on his functionality during the non-disability periods, in detail. [*Doc. 10-4* at 16]. This included testimony that Plaintiff "had constant back pain that extended into both legs from his hips down to his ankles," that "he had to lie down during the day for at least one and one-half hours out of eight hours for pain relief," that he "could not leave the house about two to three days per week," and that his pain "interfered with his ability to focus" during the first non-disability period. *Id*. The ALJ related that Plaintiff had also testified that, until July 2012 (which includes part of the disability period), "he was able to lift twenty pounds, sit twenty minutes, stand forty-five minutes, and walk half a mile without difficulty." *Id*. In addition, Plaintiff "speculated that he could have performed a sit/stand option at a workstation, but would have needed to walk around about three times each hour," and that "an ideal job would

allow him to alternate his sitting and standing positions as well as get up and walk around for three

to five minutes at a time." *Id*.   Noting that the issue during this period was "not the existence of

pain, but rather the degree of limitation incurred because of it," the ALJ summarized Plaintiff's

own testimony regarding his activities, as follows:

> In particular, [Plaintiff] did not require assistance in his personal care.   [Plaintiff] was able to care for his three dogs.   [Plaintiff] was able to prepare daily meals and do laundry and light housework, such as taking out the trash and loading and unloading the dishwasher.   [Plaintiff] was able to drive and navigate a vehicle. [Plaintiff] was able to shop in stores one to two times a week for up to at least one hour.   [Plaintiff] was able to count change, pay bills, and use bank accounts. [Plaintiff] was able to read and watch television.   [Plaintiff] was able to use a computer.   He was able to surf the internet, read internet news, check and send email, and was active on social networking sites.   The [Plaintiff] was able to use a telephone.   He was able to text.   [Plaintiff] visited with others in person, by telephone, by text, and via computer.   He was able to go out to eat.   [Plaintiff] was able to do oil painting and woodworking.   [Plaintiff] was able to do light gardening.   [Plaintiff] was able to attend church services.   [Plaintiff] was able to attend medical appointments.

*Id*. at 17.   Significantly, Plaintiff does not challenge the accuracy of the ALJ's recitation of these

matters, only his conclusion that Plaintiff's statements regarding the "degree of limitation" caused

by his pain were "not entirely credible."   However, the ALJ did not simply disregard Plaintiff's

claims of impairment.   Indeed, he found from the evidence that Plaintiff has "severe" spinal

impairments that have rendered him unable to perform any of his past work, and have left him with

the capacity to perform only a limited range of light work.[21]   While Plaintiff insists that he is not

able to engage in substantially gainful employment, there is clearly room for disagreement

regarding whether his impairments are indeed as limiting as he claims.   Where there is room to

---

[21] It should be noted that this represents a substantial reduction of Plaintiff's work capacity, as his most recent job was considered to be in the "heavy" exertional category, as described by Plaintiff.   [*Doc. 10-5* at 45].

disagree, this Court will "defer to the ALJ, as trier of fact, the individual optimally positioned to observe and assess witness credibility."   *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).   The ALJ gave reasons for his credibility findings, and based those finding on medical evidence, as well as Plaintiff's own statements.   Although one could, as Plaintiff has, argue that the evidence supports a different result, that does not render the ALJ's findings without substantial evidentiary support, as "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084.

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Opening Brief* (*Doc. 19*), which the Court has construed as a motion to remand be **DENIED** for the reasons set forth above, and the decision of the Commissioner be **AFFIRMED.**

_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**